# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

GARY MILLER,

        Plaintiff

vs.                                                    CASE NO: 2:06-CV-150-FtM-29SPC

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION[2]

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Plaintiff, Gary Miller's Complaint Seeking Review

of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's

Claim for Disability Insurance (Doc. # 1) filed on March 24, 2006.   The Plaintiff filed his

Memorandum of Law in Support of the Complaint (Doc. #18) on October 12, 2006.   The

Commissioner filed her Memorandum of Law in Support of the Commissioner's Decision (Doc. #19)

on November 6, 2006.   Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before

the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings

---

[1]    Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.   Pursuant to Rule 25(d)(1), the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Jo Anne B. Barnhart as the defendant in this suit.   No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on April 4, 2003. (Tr. 13). The applications were denied initially and upon reconsideration. (Tr. 27, 31). The Plaintiff timely filed a Request for Hearing. (Tr. 35). On April 29, 2005, a hearing was held before the Honorable Richard E. Ouellette, Administrative Law Judge (ALJ). (Tr. 287-313). The ALJ noted that the record reflects a previous application filed in June 1981, however, this was denied at the initial level. (Tr. 13). On October 25, 2005, the ALJ issued an unfavorable decision. (Tr. 13-24). The Plaintiff timely filed a Request for Review to the Appeals Council. (Tr. 8). The Appeals Council received additional evidence from the Plaintiff, and made it part of the record. (Tr. 7). The Appeals Council denied the Plaintiff's request on February 10, 2006. (Tr. 4). Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

### *Plaintiff's History*

The Plaintiff was born on February 6, 1961, making him forty-four (44) years old at the time of the hearing. (Tr. 14). The Plaintiff has a ninth (9th) grade education. (Tr. 14). The Plaintiff has a past relevant work history as a heavy equipment operator and truck driver. (Tr. 14). The Plaintiff alleges an onset disability date of April 2, 2003 due to spinal fusion with lower back pain, post fusion of the left wrist, and drug abuse. (Tr. 14).

### *Medical and Psychological History*

The medical record shows that the Plaintiff was involved in a motor vehicle accident in 1989 that resulted in a fusion of the L 5-6. (Tr. 202). On January 28, 2000, the Plaintiff returned to Dr.

2

Debra Roggow of the Rehabilitation Consultants for an evaluation regarding complaints of right shoulder pain and low back pain. (Tr. 188). Upon examination, Dr. Roggow noted myofascial tenderness at the right trapezius, tender soft tissue on the right cervical scapular and lumbosacial region with limited range of motion and a scar consistent with fusion. (Tr. 190). An assessment of chronic pain with right lower extremity radiculopathy, status post L5-S1 fusion, myofascial pain, right cervical scapular and lumbar sacral, consider C5 radiculopathy was made. (Tr. 15). Dr. Roggow noted long term Lorcet use with possible liver effects. Dr. Roggow recommended x-rays and prescribed pain medication. (Tr. 191).

On February 18, 2000, the Plaintiff presented early for a scheduled appointment to request pain medication. (Tr. 186). Dr. Roggow noted that on February 4, 2000, the Plaintiff contacted the office and received a prescription for Oxycontin, 40 mg, once every twelve (12) hours. The Plaintiff stated that his pain was so severe, he was taking it four (4) times a day. (Tr. 186). The Plaintiff was also using Lorcet approximately ten (10) times a day, having received the prescription from his primary physician. (Tr. 15, 187). Dr. Roggow renewed his prescriptions for Oxycontin with instructions to bring his bottles with him to evaluate if he's been taking the medication as prescribed. (Tr. 187). The Plaintiff also signed a narcotic agreement and was then prescribed Oxycontin, Oxy IR, 5 mgs., and Soma. (Tr. 187). The EMG report dated February 21, 2000, diagnosed chronic denervation findings along right L4-5 myotomes and nerve conduction study was consistent with right lower extremity chronic radiculopathy. (Tr. 15, 161-162).

On June 1, 2000, the Plaintiff returned to Dr. Roggow with a chief complaint of right shoulder pain. (Tr. 179). The Plaintiff stated pain in the anterior right shoulder began after raking at work. (Tr. 179). The Plaintiff rated his pain as an 8 out of 10 in the evening and a 2 or 3 level early in the

3

day or when medication is at its peak effect. (Tr. 179). Objective evaluation revealed temperature is afebrile, pulse 70, blood pressure 129/76, and weight was 154 pounds. (Tr. 179). The shoulder range of motion was not restricted in any plane. (Tr. 179). There was reproducible discrete tenderness just below the right caracoid process over the tendon sites as well as moderate tenderness over the AC joint. (Tr. 179). Provocative testing was positive to bicipital tendinitis. (Tr. 179). Dr. Roggow's assessment consisted of right acute bicipital tendinitis, short head, with clinical evidence or inflammatory process at the right AC joint, chronic L4-5 radiculopathy status post decompressive surgery and fusion, however, it was doubtful that cervical radiculopathy contributed to right shoulder pain. (Tr. 180). The Plaintiff was given a trial of Vioxx 25 mg daily. (Tr. 180). Zanaflex was given as alternative to Soma. (Tr. 180). Bicipital tendon sheath was considered as well as AC joint steroid injections if needed in the near future. (Tr. 180). The Plaintiff had normal spine films, a cervical MRI and EMG of the right upper extremity was not pursued and the Plaintiff continued on his medications. (Tr. 180).

On September 12, 2000, the Plaintiff was involved in a motor vehicle accident where he was rear-ended. (Tr. 173). He complained of a pain in the neck with no loss of consciousness. (Tr. 173). The Plaintiff denied numbness, tingling, or radiation (Tr. 173). It was noted that the Plaintiff had a negative cervical spine film on January 25, 2000, and an unremarkable EMG/nerve conduction study of the right upper extremity on February 21, 2000. (Tr. 173). The Plaintiff had pre-morbid clinical evidence of acute bicipital tendinitis as well as an inflammatory process at the right AC joint. (Tr. 173). Aching pain was noted with reproducible tenderness also along the posterior right trapezius muscle surface. (Tr. 173). Dr. Roggow's assessment was acute cervical strain subsequent to motor vehicle accident on September 12, 2000; aggravation of pre-existing right cervical-scapular

4

myofascial pain syndrome; chronic lumbar radiculopathy with right lower extremity pain, sensory deficit, and mild weakness; status post L6-S1 fusion; and anxiety.  (Tr. 175).

On November 10, 2000, the Plaintiff returned for continued evaluation and management of post-traumatic cervical-scapular myofascial pain.  (Tr. 169).  The Plaintiff stated that he continued to be bothered by pain at his left shoulder.  The Plaintiff continued to work long hours and was doing well functionally, but no doubt aggravating the soft tissue discomfort.  (Tr. 169).  The acute cervical strain subsequent to his motor vehicle accident appeared to be resolving.  (Tr. 169).  Cervical range of motion is complete in all planes. (Tr. 169).  Dr. Roggow's assessment was essentially the same and planned on the Plaintiff continuing medication.  (Tr. 169).  The Plaintiff denied sedation or functional difficulty at work and does not exhibit any problems with compliance.  (Tr. 170).

On January 9, 2001, the Plaintiff returned for a follow-up for pain in his right shoulder.  (Tr. 168).  The pain turned out to be right biceps tendinitis.  (Tr. 168).  The Plaintiff complained of a very tender bicep and shoulder. (Tr. 168).  The Plaintiff claimed that his position at work was causing the pain.  (Tr. 168).  Dr. Roggow's assessment was right biceps tendinitis.  (Tr. 168).  The Plaintiff was treated with an injection of Depo-Medrol and Marcaine into the right biceps tendon.  (Tr. 163).

On January 22, 2002, the Plaintiff returned for an annual re-visit for pain management.  (Tr. 167).  The Plaintiff stated he worked full time.  (Tr. 167).  The Plaintiff also stated the pain was controlled at an 84 level on the 1/10 intensity scale with 40 mg of Oxycontin, 4-5 tablets b.i.d.  (Tr. 167).  Dr. Roggow's diagnosis was chronic lumbar radiculopathy with intractable pain, status post laminectomy at L5-S1.  (Tr. 167).  Dr. Roggow sought an updated CAT scan of the lumbar spine and the Plaintiff was to continue Oxycontin at the present dose, as well as OxyIR, Soma, and Sonata.  (Tr. 167).

On February 15, 2002, the Plaintiff returned to Dr. Roggow to discuss the Plaintiff's CAT scan results.  (Tr. 166).  The results revealed evidence of L4-5 and 5-S1 laminectomy with intrapedicular screws in place and granulation tissue with residual fibrosis suspected. (Tr. 166).  Dr. Roggow opined  the Plaintiff's neuromuscular examination remains stable with subjective symptoms of radiating pain down the right lower extremity and numbness of the toes.  (Tr. 166).  No new weakness was identified and there is no bowel or bladder dysfunction.  (Tr. 166).

Six months later, on August 1, 2002, the Plaintiff returned with increased leg pain with numbness involving the left lower leg.  (Tr. 165).  The Plaintiff also stated that he continued to have low back, buttock and thigh pain which usually stopped at the level of the knees.  (Tr. 165).  Clinical examination reveals no evidence of recurrent radiculopathy and myofascial pain syndrome remained stable.  (Tr. 165).

On June 3, 2003, the Plaintiff presented as an emergency by EMS due to an overdose of Soma and percocet.  (Tr. 16, 142).  Urine screen revealed the Plaintiff was positive for benzodiazephine, cocaine, and opiods.  (Tr. 143).  It was noted that the Plaintiff was also on Oxycontine and was Baker Acted.  (Tr. 143).  The Plaintiff's grandmother reported that when she found him it was difficult for her to wake him up.  (Tr. 16, 143).

Approximately one year later, on July 16, 2003, the Plaintiff returned for a five week interval revisit.  (Tr. 164).  The Plaintiff requested an increase in his OxyIR dose.  (Tr. 164).  Dr. Roggow opined that the Plaintiff had opiate dependence.  (Tr. 164). Dr. Roggow noted that the Plaintiff localized his pain to an area above his surgical site, which was unusual.  (Tr. 164).  Dr. Roggow's assessment remained the same as previously opined.  (Tr. 164).  OxyIR was increased to 2 tablets and remaining medications were continued as necessary.  (Tr. 164).

On August 27, 2003, the Plaintiff returned to Dr. Roggow for periodic review.  (Tr. 162). The Plaintiff complained that his pain medication was not working well, rating his intensity as an 8 on a 1-10 Visual Analog Scale. (Tr. 162).  Objective evaluation revealed the Plaintiff as coherent and sensorium as clear. (Tr. 162).  There were no tracks upon inspection of the skin. (Tr. 162).  Manual muscle testing of all major groups of the lower extremities revealed no focal weakness or asymmetry. (Tr. 16, 162).  Subjective dullness to sensation was noted along the left lateral foot. (Tr. 16, 162). Dr. Roggow opined chronic intractable pain low back pain with lumbar radiculopathy, a history of cervicoscapular myofascial pain, opiate dependence and methadone dependence for pain.  (Tr. 162).

At the request of the Administration, on July 9, 2003, the Plaintiff was evaluated by Dr. Dareld R. Morris II, D.O. (Tr. 150-153).  The Plaintiff stated that the pain started secondary to a motor vehicle accident and has a dramatic increase in his symptoms in the past couple of years.  (Tr. 150).  Past surgical history was positive for lumbar fusion in 1991 and he denied alcohol or street drug use.  (Tr. 150).  Dr. Morris noted the complaints of back pain, with no acute distress.  (Tr. 150).  The Plaintiff ambulated with a slow gait and used a single cane due to dragging of the right leg. (Tr. 17, 151).  Range of motion is abnormal, pinch and grip testing were within normal limits at +4/5 bilaterally, muscle strength was +4/5 in all four extremities with the exception of +2/5 in the right lower extremity. (Tr. 151).  Dr. Morris noted that the Plaintiff could perform activities of daily living regarding grip strength and fine manipulation, could sit but cannot stand for a long time, and could not repeatedly carry objects.   (Tr. 151).  The Plaintiff could perform activities associated with memory, communication , and social interaction; such as see, hear, speak, and learn. (Tr. 152).  The Plaintiff was instructed to stop smoking immediately.  (Tr. 152). Dr. Morris further noted that

obvious disabling conditions are present in this case.  (Tr. 152).

On August 13, 2003, Dr. Robert Kline, completed a Physical Residual Functional Capacity Assessment (Doc. #194).  The State Agency physician concluded that the Plaintiff could lift twenty (20) pounds occasionally, ten (10) pounds frequently, stand and/or walk for six (6) hours in an eight (8) hour workday, sit for about six (6) hours  in an eight (8) hour workday, with unlimited capacity to push and/or pull. (Tr. 155).  The State Agency physician noted that the Plaintiff alleges back pain and right leg weakness secondary to motor vehicle accident and lumbar fusion in 1991.  (Tr. 155). A CT scan of the lumbar spine taken in January 2002, revealed laminectomy at L4-5 and L5-S1. (Tr.155).  Physical examination performed in July 2003 showed that the Plaintiff ambulates with low gait and with the use of a single cane due to dragging of the right leg. (Tr. 155).  Pinch and grip testing was +4/5, muscle strength +4/5 except in the right lower extremity of +2/5.  (Tr. 155). Straight leg raising was positive on the right sitting and reproducible in supine position.  (Tr. 155). Spasm and multiple trigger points were noted in lumbar points.  (Tr. 117, 155).

On October 16, 2003, a Physical Residual Functional Capacity Form was completed by Dr. Robert Kline.  (Tr. 194-201). Dr. Kline opined that the Plaintiff could occasionally lift twenty (20) pounds, lift ten (10) pounds frequently, stand or walk for two (2) hours in an eight (8) hour workday, sit about six (6) hours in an eight (8) hour workday with unlimited push or pull capability.  (Tr. 195).

On November 12, 2003, a psychological examination was performed by Dr. J.L. Bernard, at the request of the Social Security Administration.  (Tr. 202-203A). Dr. Bernard first observed that the Plaintiff was "a talkative man, who had his own agenda and a tendency to ramble".  He noted that the Plaintiff used a cane and his walk down the hall was slow, labored and pained.  (Tr. 155).  The Plaintiff complained of pain in his right leg and both hips, putting it at an 8 on a 10 point scale.  (Tr.

8

202).  The Plaintiff also complained of "stomach trouble" and taking 1 ½ packages of Rolaids a day. (Tr. 202).  The Plaintiff stated that he didn't socialize anymore and was addicted to methadone. (Tr. 202).  Upon mental examination, Dr. Bernard found the Plaintiff had clear, logical and rational thought processes.  (Tr. 203).  His mood was stable and appropriate.  (Tr. 203).  His judgment and insight were probably fair and was oriented x3.  (Tr. 203).  The Plaintiff scored 29/30 on the folstein MMSE would contratindicate cognitive function.  (Tr. 203).  The Plaintiff was diagnosed with Major Depressive Disorder , recurrent 296.3, with pain secondary to spinal injury.  (Tr. 203).  The Plaintiff had a GAF of 50.  (Tr. 203).  Dr. Bernard stated that "watching him walk reveals him to be pretty much unemployable".  (Tr. 203).

On November 20, 2003, a Psychiatric Review Technique form was completed by Dr. Carol Deatrick. (Tr. 204-218).  Dr. Deatrick reported a medically determinable impairment with major depressive disorder that does not precisely satisfy the diagnostic criteria of Listing 12.04.  (Tr. 17, 204).  The Plaintiff had mild limitations of activities of daily living, difficulties in maintaining social functioning, concentration, persistence and pace.  (Tr. 215).  There were no episodes of decompensation.  (Tr. 215).  It was noted that a new allegation of depression was made at the reconsideration level of appeal.  (Tr. 13, 217).  Dr. Deatrick noted that the Plaintiff drove himself to the interview, was very cooperative, logical, coherent with a stable mood and oriented x3.  (Tr. 13, 217).  Dr. Deatrick opined that the Plaintiff was capable of doing daily tasks and social activities but limits them due to pain.  (Tr. 13, 217).  Evidence did not establish the presence of the "C" criteria. (Tr. 13, 216).

On December 1, 2003, the Plaintiff presented to the Cape Coral Hospital for a possible seizure.  (Tr. 221-233).  The Plaintiff arrived via EMS in a confused state, however, he seemed to

be more oriented and less confused as he was being evaluated.  (Tr. 221).  The Plainiff believed this was his third seizure this year and that they were related to overmedication.  (Tr. 221).  Laboratory results revealed an elevated white blood count of 14.1 with a hemoglobin of 10.7 and a hematocrit of 31.1.  (Tr. 222).  The Plaintiff's absolute lymphocyte count was 1270, which put him at risk for HIV.  (Tr. 18, 221).  The urine drug screen showed positive for cocaine and positive for opiates.  (Tr. 222).  Urinalysis was within normal limits with th exeption of trace protein.  (Tr. 222).  Urine drug screen showed positive for marijuana and cocaine.  (Tr. 222).  CT scan of the head was negative.  (Tr. 18, 222).

Further review of the record shows that there were several instances of prescription drug and street drug use.  (Tr. 18).  The Plaintiff underwent an x-ray of the lumbar spine on January 2000, showing posterior spinal fusion, but otherwise normal, as well as seven views of the cervical spine, which were unremarkable as well.  (Tr. 18, 14-15).  On December 1, 2002, the Plaintiff presented to the Cape Coral Hospital feeling shaky and jittery.  (Tr. 243).  The Physical examination revealed no apparent distress and vitals were normal.  (Tr. 243).  The Plaintiff was awake and alert and mood and affect were appropriate.  (Tr. 243).  Electrocardiogram showed normal sinus rhythm with a heart rate of 99, normal axis, normal intervals, and no sign of ischemia.  (Tr. 18).  The Plaintiff was discharged with instruction to follow up with Dr. Johnsen for possible neurological work-up and to take medications only as prescribed. (Tr. 244).  Again on June 25, 2002, the Plaintiff presented to the Cape Coral Hospital via EMS as his speech was slurred.  (Tr. 241).  The Plaintiff was diagnosed with transient confusion with probable over medication with narcotics and muscle relaxants.  (Tr. 242).

On June 3, 2003, the Plaintiff's mother took him to Emergency because she was having difficulty waking him up.  (Tr. 18, 237).  The Plaintiff arrived awake with slight slurring of speech.

(Tr. 237).  He indicated that he took his normal four pills for his Soma and Percocet as instructed.
(Tr. 237).  The Plaintiff was released with steady gait and instructions to followup with his primary
physician, Dr. Roggow.  (Tr. 237).  Subsequently, a routine electroencephalogram was performed
on December 17, 2003 and was within normal limits, awake and drowsy.  (Tr. 18, 234).  There were
no clear lateralizing; paroxysmal, nor epileptifrom features visualized.  (Tr. 234).

On March 3, 2004, a report by Dr. Rajan Sareen reported that the Plaintiff complained of back
pain all the time.  Regarding substance abuse, he reported "none" and a neurological examination
revealed normal cranial nerves, no motor or sensory deficit.  (Tr. 18, 249).  The Plaintiff's
coordination and reflexes were within normal limits, grip strength was 100 percent bilaterally.  (Tr.
19, 249).  Spinal examination had a normal curvature with no tenderness or deformity.  (Tr. 19, 249).
Extremities showed no edema or varicosities, no clubbing or cyanosis, and no deformities.  (Tr. 19,
249).  Muscoloskeletal exam showed normal gait with normal range of motion in all joints.  Straight
leg raise is 90 degrees bilaterally.  (Tr. 19, 249).

Medical records from the office of Dr. Ephraim G. Aguilar from January 29, 2004 and March
16, 2005, indicated the doctor  basically refills claimant's prescriptions and the Plaintiff complained
that he only gets relief from narcotics.  (Tr. 19, 250-282).

<u>*Administrative Law Judge's Decision*</u>

Upon careful consideration of the entire record, the ALJ found the Plaintiff meets the
nondisability requirements for a period of disability and Disability Insurance Benefits set forth in
Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
(Tr. 23).  The ALJ found the Plaintiff had not engaged in substantial gainful activity since the alleged
onset of disability.  (Tr. 23).  The ALJ also found the Plaintiff's post status fusion of left wrist,

chronic back pain and drug abuse are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416. 920(c). (Tr. 23). However, the medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 23). The ALJ determined that the Plaintiff's allegations regarding his limitations are not totally credible. (Tr. 23). The ALJ concluded the Plaintiff had the residual functional capacity to perform light work with occasional limitation for bending, stooping, crawling and climbing, and occasional limitation for concentration on tasks assigned, but capable of performing routine tasks. (Tr. 23). The ALJ also concluded that the Plaintiff was unable to perform any of his past relevant work. (Tr. 23). The ALJ considered the Plaintiff a "younger individual between the ages of 18 and 44 and with "a limited education". (Tr. 23). Further, the ALJ found the Plaintiff has transferable skills from skilled work previously performed. (Tr. 24). The ALJ found, although the Plaintiff's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. (Tr. 24). The ALJ found examples of such jobs include work as a factory assembler of small products, which is unskilled, light work - DOT #706 684 022; an assembly machine tender, which is light unskilled work: DOT# 754 685 014; and production work, which is light, unskilled work: DOT# 706 687 010. (Tr. 24). Per the testimony of the vocational expert, there are 10,000 jobs available locally, 200,000 jobs available state-wide, and 4,000,000 jobs available on the national level. (Tr. 24). Therefore, the Plaintiff was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. (Tr. 24).

## THE STANDARD OF REVIEW

### A. Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[3]. See 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla-i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

---

[3]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

*Step 1.* Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

*Step 2.* Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

*Step 3.* Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.

*Step 4.* Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

*Step 5.* Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356, 1458 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

**B.  Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis

v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards). Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the

15

Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095.

Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. Jackson, 99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994).   With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[4] Id.

## C.   Standard of Review for Evidence Evaluated by the Appeals Council

Congress left the term "final decision" undefined in 42 U.S.C. § 405 (g). Where a claimant exhausts his administrative remedies by requesting review by the Appeals Council and the Appeals Council then denies review, the Appeals Council's order denying review is a "final decision" of the Commissioner under § 405 (g). Sims v. Apfel, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L. Ed. 2d 80 (2000); Bloodsworth, 703 F.2d at 1239.  The Appeals Council "will" review a case if there

---

[4]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence. 20 C.F.R. § 416.1470; Sims, 530 U.S. at 111; Parker v. Bowen, 788 F.2d 1512, 1518 (11th Cir. 1986) (en banc). The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. Sims, 530 U.S. at 111.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and against the granting of benefits, the Appeals Council's review is similarly broad. Id. at 111-112. When the Appeals Council refuses to consider new evidence submitted to it and denies review, the Appeals Council's decision denying review is subject to judicial review. 20 C.F.R. § § 404.970 (b); 416.1470 (b); Keeton, 21 F.3d at 1066.  Furthermore, the Appeals Council commits reversible error when it refuses to consider new evidence if that evidence was available at the time of or prior to the ALJ's hearing and then denies review. Id. at 1066.  Similarly, it is reversible error for a district court to consider only the evidence presented to the ALJ — and to ignore the new evidence presented to the Appeals Council — in reviewing a decision of the Appeals Council. Id.  The Appeals Council must consider and evaluate new evidence to determine whether there is a basis for changing the ALJ's decision. Falge v. Apfel, 150 F.3d 1320, 1322 n. 4 (11th Cir. 1998). When the Appeals Council has denied review, the district court looks only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence. Id. at 1323; Eads v. Secretary of Health and Human Services, 983 F.2d 815, 817 (7th Cir. 1993) (ALJ cannot be faulted for failure to weigh evidence never presented to him). The Eleventh Circuit directs the district courts to consider evidence submitted to the Appeals Council in reviewing the Appeals Council's denial of review. Falge, 150 F.3d at 1324; Keeton, 21 F.3d at 1066.  Indeed, it makes sense that Congress has

17

provided for judicial review of the Commissioner's final decision — the last step of review necessary to exhaust administrative remedies. When the Appeals Council refuses to consider new evidence submitted to it, the Appeals Council's decision denying review is subject to judicial review for error. Id.   Similarly, when the Appeals Council denies review of an ALJ's decision after receiving, considering, and evaluating new and material evidence that clearly and thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's decision denying review also must be subject to judicial review for error. 20 C.F.R. § 404.970 (b) (Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the relevant period, and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record); Falge, 150 F.3d at 1324; Keeton, 21 F.3d at 1066, 1068.  The Commissioner cannot avoid judicial review of the Appeals Council's decision to deny review by considering but not acting on new evidence that is highly probative of disability, or by considering but not acting on evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence currently of record.

## DISCUSSION

The Plaintiff objects to the ALJ's decision arguing: (1) the ALJ did not support, with substantial evidence, his determination that the Plaintiff's impairments did not meet any of the listings of impairments; (2) the ALJ erred in rejecting the opinion of the Plaintiff's treating physician Dr. Ruggow; (3) the ALJ did not comply with the Commissioner's policies for evaluating disability claims which involve drug abuse; and (4) the ALJ's credibility finding was not supported by substantial evidence.  The Government argues that the ALJ's decision was supported by substantial evidence in the record and that the ALJ was not required to make a determination regarding the effect

18

of the Plaintiff's drug abuse on his disability because the ALJ found the Plaintiff not disabled.

*(1) Whether the ALJ Supported, His Determination that the Plaintiff's Impairments did not Meet Any of the Listings of Impairments with Substantial Evidence*

In evaluating whether a claimant is disabled, the ALJ must follow the five step sequential inquiry described in the regulations.  20 C.F.R. §§ 404.1520(a), 404.920(a).  At the third step of the inquiry, the ALJ must consider whether the claimant's impairment(s) meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Wilson v. Apfel, 179 F.3d 1276, 1277 n. 1 (11th Cir. 1999).  If so, then the claimant is disabled.  To a meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. Johnson v. Barnhart, 148 Fed Appx. 838, 840 (11th Cir. 2005).  To equal a Listing, the claimant's medical findings must be at least equal in severity and duration to the listed findings.  Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).  If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner will review the impairments symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.  Id.

In this instance, the Plaintiff states the ALJ did not support his determination that the Plaintiff did not meet or equal the listed impairment as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 with substantial evidence.  Specifically, the Plaintiff states  the ALJ failed to discount the report of Dr. Morris opining the Plaintiff met the Listing.

In his decision, the ALJ stated "[t]he medical evidence indicates that the claimant is post-status fusion of left wrist with chronic back pain and drug abuse, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal, either singly or in

19

combination to one of the impairments listed in Appendix 1, Sub P, Regulations No. 4." (Tr. 19)(Internal quotations omitted). In reaching this determination, the ALJ reviewed the report of Dr. Dareld R. Morris II D.O. a State Consulting Physician, and noted that Dr. Morris opined that "obviously, disabling conditions are present in this case." (Tr. 17). However, contrary to the Plaintiff's contention, Dr. Morris did not state that he met the listed impairment, but simply that "disabling conditions are present." (Tr. 150-153).

The Plaintiff's x-ray of his lumbar spine taken in January of 2000 showed posterior spinal fusion but was otherwise normal. (Tr. 18). On December 1, 2002, the Plaintiff presented at the Cape Coral Hospital's Emergency Room feeling jittery but the Plaintiff's Electrocardiogram was normal. (Tr. 18). On June 25, 2002, the Plaintiff was taken by EMS to the emergency room after a clerk at the convenience store noted that the Plaintiff was confused. (Tr. 18). The emergency room report stated the Plaintiff was confused from probable overmedication with narcotics and muscle relaxers. (Tr. 18). On June 23, 2003, the Plaintiff's mother took him to the emergency room because she could not wake him up. (Tr. 18). At that time, the Plaintiff's physical examination revealed a full range of motion. (Tr.18). The ALJ also reviewed the Plaintiff's visit to the emergency room on December 1, 2003. During that visit, the Plaintiff's blood work tested positive for marijuana and cocaine. (Tr. 18). The ALJ also noted a report from March 3, 2004, stating the Plaintiff complained of back pain all the time but the neurological examination revealed normal cranial nerves, no motor or sensory deficit. (Tr. 18). The Plaintiff's coordination and reflexes were normal and his grip strength was 100 percent bilaterally. (Tr. 18-19). In addition, the ALJ noted the Plaintiff's spinal examination had a normal curvature with no tenderness or deformity, the extremities showed no edema or varicosities, no clubbing or cyanosis, and no deformities. (Tr. 19). At that time, the

Plaintiff's muscoloskeletal exam showed a normal gate, range of motion normal in all joints, and straight leg raise was 90 degrees bilaterally. (Tr. 19). Finally, at Step three in the evaluation, the ALJ noted that Dr. Ephraim G. Aguilar's office records showed the Plaintiff had not made an office visit from January 29, 2004, through March 16, 2005. (Tr. 19). Instead, the Plaintiff just had the doctor refill his prescriptions. (Tr. 19).

The ALJ noted that the State Agency consultant, Dr. Ronald D. Kline, conducted an RFC on the Plaintiff and found that he could lift/carry 20 pounds occasionally, 10 pounds frequently, stand, walk and sit about six (6) hours in an eight (8) hour workday with no push pull limitations. (Tr. 19). The ALJ reviewed the mental examinations of Dr. Bernard and Dr. Carol Deatrick, PhD. who both opined that the Plaintiff's mental thought processes were clear and that the Plaintiff was coherent although Dr. Bernard stated after observing the Plaintiff leave his office that the Plaintiff did not appear capable of working.

In addition to a thorough review of the Plaintiff's medical records, the ALJ also held, later in his decision, that Dr. Morris's and Dr. Bernard's observations were in marked contrast to the treating physician's observations. (Tr. 21). The ALJ noted that the Plaintiff's left wrist complaints were not supported by medical record and further adding that Dr. Morris observed the Plaintiff's grip strength and fine manipulation were normal. (Tr. 21).

The Plaintiff bears the burden at Step number three of establishing that he meets or equals a listed impairment. In fact, for a claimant's impairment to equal a Listing, the Plaintiff must present medical findings equal in severity to all the criteria for the most similar impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Here, as noted by the ALJ, Dr. Morris did not opine that the Plaintiff met a listing but that there was some disability in his case. (Tr. 19, 150-153).

21

The ALJ reviewed the Plaintiff's entire medical record and noted the Plaintiff's straight leg raise test was at 90 percent. (Tr. 19). The Plaintiff's own brief, footnote number 5, clearly states that a straight leg raise of 85 percent or more is considered normal. Therefore, even by the Plaintiff's own standard, the ALJ presented medical evidence that the Plaintiff did not meet or equal one of the requirements of the Listing.

Regarding Dr. Morris' report, the ALJ discounted Dr. Morris's findings stating that Dr. Morris' report contrasted with the treating physician's report. In making his determination, the ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled not just one single physicians report. Clearly the ALJ reviewed all of the medical records in this case and supported his Step 3 determination based on substantial evidence in the record. Thus, the ALJ's decision that the Plaintiff was not disabled at Step 3 should not be disturbed by the Court.

_(2) Whether the ALJ Erred in Rejecting the Opinion of the Plaintiff's Treating Physician_

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580,  (11th Cir. 1991) (ALJ properly discounted

treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334.

The Plaintiff argues the ALJ failed to discredit Dr. Roggow's, a treating physician, opinion that the Plaintiff was temporarily disabled. On August 27, 2003, Dr. Roggow opined the Plaintiff had not been gainfully employed since April of 2003 and further that he was temporarily totally disabled during the interval. (Tr. 163).  The Defendant responds that Dr. Roggow's medical records do not indicate the Plaintiff's condition changed or caused disabling limitations after April 2, 2003.  The Defendant further argues the regulations require a claimant to be disabled  for a period of twelve consecutive months and that Dr. Roggow's opinion does not include clinical notes after August 27,

2003.  Therefore, the Defendant argues that Dr. Roggow's opinion does not meet the Regulation's duration requirements.

While the ALJ did address Dr. Roggow's records he never addressed or discounted her opinion finding the Plaintiff totally disabled, or  temporarily totally disabled.  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.  Based upon Dr. Roggow's opinion there is an incomplete record regarding the Plaintiff's disability status.  The ALJ should have inquired further into Dr. Roggow's opinion of August 27, 2003, to determine the duration of the alleged temporary disability or should have discounted the opinion with evidence from the medical record. Therefore, the issue should be remanded to the Commissioner to articulate the ALJ's reasons for discounting Dr. Roggow's opinion.

### *(3) Whether the ALJ Complied with the Commissioner's Policies for Evaluating Disability Claims Which Involve Drug Abuse*

"Congress amended the Social Security Act to provide that a claimant 'shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.'" Doughty v Apfel, 245 F.3d 1274, 1278-1279 (11th Cir. 2001) (citing  42 U.S.C. § 423(d)(2)(C) (as amended)).  The regulations implementing 42 U.S.C. § 423(d)(2)(C)

24

provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then must determine whether drug addiction or alcoholism is a contributing factor material to the determination of disability. <u>Doughty</u>, 245 F.3d at1279 (citing 20 C.F.R. § 404.1535).  "The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol." <u>Doughty</u>, 245 F.3d at1279 (citing 20 C.F.R. § 404.1535(b)(1)).

The Plaintiff argues that since the ALJ determined that he had a drug addiction,  he then failed to consider whether his drug abuse contributed to his disability as required by 42 U.S.C. § 423(d)(2)(C).  The Plaintiff's argument lacks merit.  The Statute requires the ALJ to make a determination regarding whether or not a claimant's drug addiction was a material factor contributing to his disability.  Here, the ALJ found the Plaintiff was not disabled.  Therefore, the ALJ was not required to make a "materiality determination" regarding the Plaintiff's drug abuse.

<u>(4) Whether the ALJ's Credibility Finding was Supported by Substantial Evidence</u>

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. <u>Foote</u>, 67 F.3d at 1561-62; <u>Jones v. Department of Health and Human Services</u>, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. <u>Hale v. Bowman</u>, 831 F.2d 1007, 1012 (11th Cir. 1987); <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. <u>Foote</u>, 67 F.3d at 1561-62; <u>Cannon</u>

v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

In his decision the ALJ found the Plaintiff's testimony not credible. (Tr. 21).  After a thorough review of the medical record, the ALJ held in pertinent part:

> I note that some examiners are influenced by the claimant's claim of pain.  At a psychological consultative examination the examiner said: "simply watching him walk reveals him to be pretty unemployable." (Exhibit 7F).  Also, a State Agency doctor said: He can sit but cannot stand or repeatedly carry objects.  Obviously, disabling conditions are present in this case." (Exhibit 3F).  I conclude that these observations are in marked contrast to the treating physician's observations and emergency room personnel.   The claimant basically enhances his symptoms when he is at disability exams, but does not do so when truly seeking assistance.  When he goes to ER for one crisis or another, the ER personnel do not notice any significant problems.  At the hearing, the claimant used a cane and had a distinct limp, and was a bit theatrical.  He also raised the issue of a fused left wrist in the past but records do not reflect surgery of that nature.  In any event, the claimant insists he cannot pull or [push] with his dominate left hand or lift anything over 10 pounds.  This testimony is at odds with the fact that the medical records never mention left grip strength and fine manipulation problems anywhere.  On the contrary, a State Agency doctor noted that claimant's grip strength and fine manipulation are normal. (Exhibit 3F).  Also noted in Exhibit 10F, the claimant was driving a motorcycle in January 2002 and stopped because of dizziness, not because he couldn't physically operate it.  It is noted that the motorcycle weighs about 600 pounds.  The claimant's

> credibility is also very weak because he denies the use of street drugs at the [sic] hearing and to several examiners noted above, despite the fact that several urine tests were positive for the use of cocaine.

(Tr. 21).  The Plaintiff argues that the ALJ erred in considering his motorcycle riding in 2002 because that was before the alleged onset of his disability in April 2003.  In addition, the Plaintiff states the ALJ erred because the emergency room visits demonstrated the Plaintiff was too confused and disoriented to work.  Therefore, the Plaintiff argues the ALJ substituted his opinion for the opinion of the medical professionals.  The Defendant states the ALJ supported his credibility decision with substantial evidence and supports his argument with citations to Dr. Roggow's reports.

After reviewing the parties briefs an the ALJ's decision, the Court concludes the ALJ did not articulate specific and adequate reasons supporting his credibility determination.  The ALJ states the medical record is devoid of any evidence the Plaintiff had left wrist fusion performed yet, the ALJ's decision notes that Dr. Roggow's report contained information regarding the Plaintiff's status post left wrist fusion. (Tr. 15).  However, the ALJ is not being inconsistent in his decision.  He acknowledges that Dr. Roggow's report states there is status post left wrist fusion, but the medical records regarding the left wrist fsion are not presented in the Plaintiff's evidence.  Furthermore, the ALJ noted the State Agency Physician, Dr. Morris, opined the Plaintiff's grip strength and fine manipulation were normal. (Tr. 21, 151).  The ALJ also noted the Plaintiff denied using narcotics other than those prescribed by a physician.  The record is replete with the Plaintiff denying drug abuse and subsequent urine tests establishing cocaine and marijuana usage.  Thus, in this instance, the ALJ clearly articulated his rationale for his credibility finding.  The Court will not disturb a clearly articulated credibility finding supported with substantial evidence in the record.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The Decision of the Administrative Law Judge should be **REMANDED** pursuant to 42 U.S.C. § 405(g) sentence four for further consideration by an ALJ of Dr. Roggow's opinion dated August 27, 2003, that the Plaintiff was temporarily totally disabled from April 2, 2003.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this   20th   day of , 2007.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  Counsel of record, MJCD

28